In the Matter of the Claim of HELEN T. RENEE, Appellant; EDWARD CORSI, as Industrial Commissioner, Respondent.

Argued October 10, 1944; decided November 30, 1944.

*Paul N. Turner* and *Rebecca Brownstein* for appellant. I. The claimant was engaged in full time employment. (*Employment Commission* v. *Los Angeles Downtown Publishing News Corporation*, 59 A. C. A. 612; *Board* v. *Hearst Publications*,

*Inc.*, 322 U. S. 111.) II. Claimant was available to accept employment for which she was fit by training and experience. (*California Employment Commission* v. *Los Angeles Downtown Shopping News*, 59 A. C. A. 612.)

*Nathaniel L. Goldstein, Attorney-General* (*Francis R. Curran* and *Orrin G. Judd* of counsel), for respondent. Claimant was ineligible for benefits as a matter of law. (*Matter of Scatola*, 257 App. Div. 471; *Matter of Eckler*, 261 App. Div. 313, 286 N. Y. 662; *Matter of Purdue*, 265 App. Div. 1028; *Matter of Perroto*, 266 App. Div. 811.)

CONWAY, J. There is presented to us for construction the term " part time worker " as contained in 1942 in Labor Law, article 18, entitled " Unemployment Insurance Fund," section 502, subdivision 1. Subdivision 1 defined the term " employment " and then excepted from it " (5) Employment as a part time worker of any person actually in regular attendance during the day time as a student in an institution of learning."

The claimant was born in 1926, and has been a professional actress since she was twelve years of age. Prior to that time, at the age of ten, she had entered a dramatic school in New York City. From at least 1938, she had attended a second school known as " The Professional Children's School " in New York City. That school offers a complete grammar and high school course to children engaged in some form of theatrical work. The school year commences in September and continues until the end of May on five days each week between the hours of ten in the morning and two-fifteen in the afternoon. When students are unable to attend by reason of conflicting rehearsal hours, their absence is excused and their work mailed to them. That is true also when children are away on tour. If need be, they may take their examinations while away from the school. In 1941, the claimant was employed for twenty-one weeks by two producing corporations and her total earnings exceeded $1,000. She appeared in six evening and two afternoon performances each week. She was required to, and did in fact, appear at the theatre at least one-half hour before each performance and remained subject to call throughout the performance. She appeared in each act of the play, the total time of her appearance on the stage being about forty minutes. There is a finding

that the services rendered did not differ in any respect from those rendered by adult performers. There are no issues of fact involved. The sole question is whether the claimant was engaged in " employment " within the meaning of the statute or was a " part time worker " and thus excepted from its operation.

The article creating an Unemployment Insurance Fund (art. 18) was added to the Labor Law by chapter 468 of the Laws of 1935. In that statute there was no exclusion of part time workers from the term " employment " as there defined. Accordingly, in *Matter of Scatola* (282 N. Y. 689), we held that a route carrier of newspapers, a minor, was an employee and entitled to unemployment benefits. Thereupon, in 1939, by section 1 of chapter 662 of the Laws of 1939, it was provided:

" But for the purposes of this article, ' employment ' shall not include: * * *

" (5) Employment as *a part time* worker of a *minor* under the age of twenty-one years *who is actually in regular attendance during the day time as a student in an institution of learning.*" (Underscoring supplied.) Then in *Matter of Eckler* (286 N. Y. 662), we held that minor students at an institution of learning who were newspaper carriers were excluded from the classification " employment " by reason of that amendment. In 1940, by chapter 799 of the Laws of 1940, the word " minor " was omitted from the statute and the words " any person " were substituted.

The present case arises under the language of that amendment. The Industrial Commissioner relies largely upon *Matter of Purdue* (265 App. Div. 1028), and *Matter of Perroto* (266 App. Div. 811). In the *Purdue* case, the claimant, a regular daytime student in high school, appeared as a choir boy in a play entitled " The Man Who Came to Dinner," which was produced in New York City. It was correctly held that he was not in a covered employment. The record in that case shows that the claimant admitted that he was not actively seeking employment because *it would interfere with his studies,* although he said he would accept work if similar working conditions were offered. Further, it was not required that he be at the theatre before 3:30 P. M. In the instant case, the Contract Secretary of the Actors Equity Association pointed out that Purdue was

what is known as a professional "walk-on," was actually on the stage one and one-half minutes, was not under an Actors Equity Contract, and did not seek further employment because it would interfere with his studies. In other words, he was not a professional actor, as is the claimant here. In the *Perroto* case, the claimant was a pin boy in a bowling alley, working from six o'clock to midnight on four nights during the week, and from noon until one A. M. on Saturdays and Sundays. The average boy could do that, or act as newspaper carrier as in the *Eckler* case (*supra*). It would clearly be part time work, arranged so as not to conflict with school hours.

From the foregoing, it is apparent that the definition of "part time worker" is not easy to formulate. We cannot say that regular attendance during the daytime as a student in an institution of learning makes every claimant *ipso facto* a "part time worker." Having in mind that the statute since the amendment of 1940 no longer excepts minors as a class, such an interpretation would exclude from unemployment benefits any person employed, no matter how long his hours of work, if he were enrolled regularly for even one course in the daytime at a school or college. Such drastic interpretation is not required. The better test to apply, we think, is to examine the intent of the worker as disclosed by all the circumstances of the case so as to determine whether the work in question is engaged in as a permanent method of earning a livelihood or is engaged in as a temporary job taken on and performed along with normal school work and subordinate thereto. Applying that test upon the undisputed facts presented here, it is clear that the claimant is engaged in her profession and that her schooling has been arranged with the apparent consent of State and local authorities so that it is subordinate thereto.

The order of the Appellate Division and the decision of the Unemployment Insurance Appeal Board should be reversed, with costs in all courts, and the matter remitted to the Unemployment Insurance Appeal Board for action not inconsistent with this opinion.

LOUGHRAN, RIPPEY, LEWIS, DESMOND and THACHER, JJ., concur; LEHMAN, Ch. J., dissents.

Ordered accordingly.